IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CINDERELLA HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 1:20-cv-750-JTA |
| v. | ) | |
| | ) | (WO) |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), the claimant, Cinderella Harris ("Harris"), brings this action to review a final decision by the Commissioner of Social Security ("Commissioner").  (Doc. No. 1.) [1]  The Commissioner denied Harris' claim for a period of disability and Disability Insurance Benefits ("DIB").  The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Docs. No. 9, 10.)

After careful scrutiny of the record and the briefs submitted by the parties, the Court finds that the decision of the Commissioner is due to be AFFIRMED.

---

[1] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

## I.      PROCEDURAL HISTORY AND FACTS

Harris was 56 years old on her alleged disability onset date of June 5, 2017.  (R. 136.)[2]  She obtained a high school education and completed a year and a half of college. (R. 36.)  She previously worked as a bakery/deli worker and a security guard.  (R. 37-39.) On January 4, 2018, Harris protectively filed an application for a period of disability and DIB under Title II (42 U.S.C. §§ 401, *et seq*.)  (R. 136.)  Harris alleged disability due to a history of multiple strokes with residual limitations, diabetes, diabetic neuropathy in her feet, early arthritis, inability to stand for prolong periods of time, high blood pressure, high cholesterol, chronic use of a blood thinner due to strokes, and chronic severe pain.  (R. 155.)

On March 28, 2018, Harris' claim was denied (R. 66) and on April 24, 2018 she requested an administrative hearing (R. 80-81).  The hearing was held by teleconference on July 23, 2019.  (R. 28-52.)  The Administrative Law Judge ("ALJ") returned an unfavorable decision on October 17, 2019.  (R. 12-26.)

Harris requested Appeals Council review of the ALJ's decision.  (R. 132-35.)  On July 1, 2020, the Appeals Council denied her request for review (R. 1-4), and the hearing decision became the final decision of the Commissioner.[3]  On September 18, 2020, Harris

---

[2] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case.  (*See* Doc. No. 18.)

[3] "When, as in this case, the ALJ denies benefits and the [Appeals Council] denies review, [the court] review[s] the ALJ's decision as the Commissioner's final decision."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted).

filed the instant action seeking review of the Commissioner's final decision.  (Doc. No. 1.) This matter is ripe for review.

## II.   STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). "The Commissioner's factual findings are conclusive" when "supported by substantial evidence."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)).  Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence.  *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner.  *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210.  However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo. Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the

decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The district court may remand a case to the Commissioner for a rehearing if the court finds "either . . . the decision is not supported by substantial evidence, or . . . the Commissioner or the ALJ incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

### III.   STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security DIB must prove that she is disabled. *See* 20 C.F.R. § 404.1505. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The evaluation is made at the hearing conducted by the ALJ. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. §

404.1520(c).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

If the claimant has failed to establish that she is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis.  At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  The ALJ must determine whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(f).  If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled.  20 C.F.R. § 404.1560(b)(3).  If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(g)(1).  In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her RFC, age, education, and work experience.  20 C.F.R. § 404.1560(c).  Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

## IV.   ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ in this case found that Harris met the insured status requirements of the Social Security Act through

December 31, 2022.  (R. 17.)  The ALJ also found that Harris had not engaged in substantial gainful activity since the alleged onset date of June 5, 2017.  (R. 17.)

The ALJ found Harris is severely impaired by coronary artery disease ("CAD"), status post transient ischemic attack ("TIA") and cerebrovascular accident ("CVA").  (R. 18.)  Nevertheless, the ALJ concluded that Harris' severe impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (R. 19.)

After consideration of the entire record, the ALJ determined that Harris retains the RFC to perform light work[4] as defined in 20 C.F.R. § 404.1567(b), and that Harris can frequently handle and finger.  (R. 19.)  The ALJ did not specify any postural or environmental workplace limitations for Harris.  In accordance with this RFC and the hearing testimony from a vocational expert ("VE"), the ALJ concluded Harris is able to perform her past relevant work as a security guard because that work is actually and generally performed at the light work level.  (R. 23, 49-50.)

Based upon the ALJ's finding that Harris is capable of performing her past relevant work as a security guard, she concluded that Harris has not been under a disability from her alleged onset date of June 5, 2017 through October 17, 2019, the date of the ALJ's decision.  (R. 23.)  The ALJ found that based on the application for a period of disability

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

and DIB filed on March 28, 2019, Harris is not disabled under sections 216(i) and 223(d) of the Social Security Act.  (R. 23.)

## V.      DISCUSSION

Harris raises three issues on appeal. First, she argues the ALJ erroneously found her capable of past relevant work and therefore failed to properly apply the Medical-Vocational Guidelines.  (Doc. No. 16 at 6-9.)  Second, she argues that the ALJ's RFC finding is inconsistent with the state agency's RFC assessment that the ALJ found to be persuasive. (*Id*. at 9-12.)  Third, Harris argues that the ALJ failed to properly consider her high cholesterol.  (*Id*. at 12-14.)  The Court addresses each of these arguments below.

A.  Past Relevant Work

Harris contends that the ALJ (1) failed to comply with Social Security Ruling ("SSR") 82-62 when she determined that Harris could perform her past relevant work as a security guard and, (2) failed to resolve discrepancies between the occupation description provided by the VE and as Harris performed it.  (Doc. No. 16 at 8.)  The Commissioner responds that substantial evidence supports the ALJ decision because Harris did not meet her burden of demonstrating that she could not work as a security guard.  (Doc. No. 17 at 4.)

Harris reported that her work as an unarmed security guard required her to walk for eight hours and stand for six hours each workday.  (R. 38, 39, 182.)  Her duties included checking passes, signing in visitors and delivery trucks, making security checks on the property, ensuring that no one was hurt in the event of a disturbance, escorting terminated employees off the property, checking workers at entry and exit, and checking for fires or

locked doors.  (R. 38, 39.)  She testified that she could not perform that work again because she cannot run or carry a heavy object such as a fire extinguisher[5] due to neuropathy in her feet, diabetes, high blood pressure, a history of strokes and high cholesterol.  (R. 39-40.) The VE testified that the occupation of security guard is generally and actually performed at a light level with citation to the listing in the Dictionary of Occupational Titles ("DOT"). (R. 49, 50.)

A claimant bears the burden of showing that she can no longer perform her past relevant work as she actually performed it, or as it is performed in the general economy. *Waldrop v. Comm'r. of Soc. Sec.*, 379 F. App'x 948, 953 (11th Cir. 2010) (per curiam) (citing *Jackson v. Bowen*, 801 F.2d 1291, 1293–94 (11th Cir. 1986) (per curiam)). Generally, a claimant is not disabled if she can perform past relevant work, "either as the claimant actually performed it or as generally performed in the national economy."  20 C.F.R. § 404.1560(b)(2).  During step four of the five-step sequential evaluation process, the ALJ must (1) assess the claimant's RFC and (2) identify the "physical and mental demands" of the claimant's past work to determine if those demands are compatible with the claimant's current abilities.  *Holder v. Soc. Sec. Admin.*, 771 F. App'x 896, 897 (11th Cir. 2019) (quoting 20 C.F.R. § 416.945(a)(1)).  "A claimant must show that [s]he is not 'able to perform [her] past *kind* of work, not that [s]he merely [is] unable to perform a specific job [s]he held in the past.' "  *Douglas v. Comm'r of Soc. Sec.*, 486 F. App'x 72, 74

---

[5] Harris reported to the state agency that she did not use tools, machines or equipment when she worked as a security guard.  (R. 57.)

(11th Cir. 2012) (per curiam) (explaining a claimant's burden at Step Four of the sequential evaluation for disability).

SSR 82-62 provides that where an ALJ finds that a claimant can perform a past relevant job, the ALJ must make a finding of fact as to the claimant's RFC, a finding of fact as to the physical and mental demands of the past job or occupation, and a finding of fact that the claimant's RFC would permit a return to the past job or occupation.  SSR 82-62, 1982 WL 31386, at *4 (1982).

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles,  etc., on the requirements of the work as generally performed in the economy.

1982 WL 31386, at *3.  This Court has previously found that SSR 82-62 "only requires that sufficient documentation be obtained 'to permit a decision as to the individual's ability to return to such past work.' "  *Nobles v. Astrue*, Civ. No. 2:08cv124-CSC, 2009 WL 275643, at *2 (M.D. Ala. Feb. 5, 2009).

The Eleventh Circuit has found that the DOT "is integral to disability hearings" because it is a reliable government source that the Social Security Administration relies upon for "information about the requirements of work in the national economy." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364-65 (11th Cir. 2018).  An ALJ

may rely upon occupational descriptions in the DOT because it provides "information about the demands of jobs as they are actually performed in the national economy, which is sufficient to describe the physical and mental demands of a claimant's past relevant work as it was actually performed in the national economy." *Whatley v. Berryhill*, Civ. No. 17-490-B, 2019 WL 1403303, at *9 (S.D. Ala. Mar. 28, 2019) (ALJ's finding that a claimant could return to past work satisfied SSR 82-62 where the VE's testimony was consistent with the DOT and therefore provided sufficient evidence regarding the physical and mental demands of that work).

Here, substantial evidence supports the ALJ's decision.  The record before the ALJ included two work history reports completed by Harris.  (R. 162-169, 178-185.) Harris testified about her age, education, work history, and functional limitations during the administrative hearing.  (R. 36-47.)  The VE, who had the benefit of Harris' testimony and work history, testified that a hypothetical individual with a high school education, past work like Harris, and capability of performing light work with frequent handling and fingering, could perform the security guard position.  (R. 48, 50.)  The VE testified that Harris' past work as a security guard is "DOT code 372.6667-034[,]" which is semi-skilled generally and actually performed at a light exertional level.  (R. 49.)  The VE also testified that the hypothetical individual would need to be able to stand or walk in two-hour increments depending on the workflow.  (R. 51.)  The ALJ considered the VE's testimony, which was based upon the DOT job description, and the medical records and found that Harris can perform her past relevant work as a security guard.  (R. 23.)  The ALJ noted the VE's testimony that security guard is classified as "light work" in the DOT and that such

work is generally and actually performed at that exertional level.  (R. 23.)  The ALJ found

that "[i]n comparing [Harris' RFC] with the physical and mental demands of [the security

guard] work," Harris "is able to perform [the security guard work] as actually and generally

performed."   (R. 23.)   Accordingly, the Court finds that that record here contained

sufficient evidence regarding the physical and mental demands of Harris' past relevant

work, the ALJ permissibly relied on the VE's testimony regarding Harris' past relevant

work, and the record in this case contained sufficient documentation and testimony to

permit an informed determination of Harris' ability to perform past relevant work.

Harris' argument that the ALJ failed to differentiate between the physical demands

inherent in the VE's testimony of the DOT description of security guard work and the

actual duties of that position as she performed it is unpersuasive.  The caselaw is clear that

the ALJ may conclude that a claimant can perform a past job as it is usually performed in

the national economy.  *Douglas*, 486 F. App'x at 74; *Whatley*, 2019 WL 1403303, at *10.

The ALJ is not required to consider the additional physical demands Harris described

which related to her past employment as an unarmed security guard.  The ALJ permissibly

relied upon the DOT and the VE's testimony in determining that Harris could return to her

past relevant work as generally required by employers in the national economy.  Further,

Harris has not met her burden to show an inability to return to her past relevant work.

B.  RFC Assessment

Harris seeks remand because the ALJ found the medical opinion of state examiner

Dr. Alton James ("Dr. James") persuasive but did not incorporate each physical limitation

recommended by Dr. James into the RFC determination.  (Doc. No. 16 at 11.)  Harris

contends that the restrictions in Dr. James' opinion were ignored by the ALJ because the "RFC determination, as written, suggests that [she] can constantly climb ladders, ropes, and scaffolds, constantly climb ramps and stairs and constantly stoop, kneel, crouch, and crawl." (*Id*. at 11.)   Harris argues there is no logical connection between the ALJ's acceptance of Dr. James' opinion and rejection of Dr. James' recommendations on postural restrictions.   (*Id*.)   The Commissioner responds that substantial evidence supports the ALJ's RFC assessment and evaluation of Dr. James' opinion.  (Doc. No. 17 at 6.)

The state agency denial of Harris' application for DIB includes an RFC assessment by Dr. James.  (R. 63-65.)  Dr. James opined that Harris could lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; could frequently climb ramps and stairs and occasionally climb ladders, ropes and scaffolds; and could frequently stoop, kneel, crouch and crawl.  (R. 63-64.)   Dr. James also opined that Harris has no manipulative or environmental limitations.  (R. 64.)   Based upon the RFC assessment, the state agency determined that Harris could return to work as a security guard, as that work is generally performed in the national economy.  (R. 65.)  The agency noted that Harris could perform this work despite her limitations in the performance of certain work activities.  (R. 65.)

The ALJ discussed Dr. James' opinion at length in the administrative decision.  (R. 22.)  The ALJ found Dr. James' opinion to be persuasive because it was "consistent with the preponderance of the evidence reviewed."  (R. 22.)  The ALJ noted that the record did not "contain any opinions from treating, examining or evaluating physicians indicating [Harris] has limitations substantially greater than those determined in this decision that

12

were not considered." (R. 22-23.) The ALJ then referred to the specific medical exhibits she used to assess Harris' RFC. (R. 23.)

When deciding administrative appeals of disability claims filed after March 27, 2017, an ALJ focuses on "the persuasiveness of the content of the evidence." *Harner v. Soc. Sec. Admin., Comm'r*, ___ F.4th ___, 2022 WL 2298528, at *3 (11th Cir. June 27, 2022) (citing 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017)). Under the revised administrative rules, an ALJ gauges persuasiveness according to five factors: (1) the supportability of the medical opinion; (2) its consistency with other record evidence; (3) the physician's relationship with the claimant; (4) the physician's specialty; and (5) other relevant information such as the physician's familiarity with the other record evidence and with making a claim for disability. *Harner*, 2022 WL 2298528, at *3; *see* 20 C.F.R. § 404.1520c(c)(1-5). It is important to note that an ALJ is "not required to articulate how [she] considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 404.1520c(b)(1); *see Morris v. Kijakazi*, Civ. No. 21-27-MU, 2022 WL 2080312, at *4 (S.D. Ala. June 9, 2022) (an ALJ is not required to regurgitate the entirety of a medical opinion in her decision). In addition to assessing a claimant's medical evidence, an ALJ is responsible for determining a claimant's RFC. *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016) (citing 20 C.F. R. § 404.1546(c)).

The Court is unpersuaded by Harris' argument. As noted by the Commissioner, the functional limitations opined by Dr. James are consistent with the functional limitations for light work. Social Security Regulation ("SSR") 83-10 provides,

> The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; . . . .
>
> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping.

*See* SSR 83-10, 1983 WL 31251, at *5-6 (1983).   As stated above, Dr. James opined that Harris could lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; could frequently climb ramps and stairs and occasionally climb ladders, ropes and scaffolds; and could frequently stoop, kneel, crouch and crawl.  (R. 63-64.)  Contrary to Harris' argument, the ALJ did not reject Dr. James' recommended limitations when she assessed Harris with a light work RFC including the ability to frequently handle and finger. (R. 19.)

The record shows that the ALJ credited Dr. James' "knowledge and understanding of the Social Security Administration's regulations and evidentiary requirements and medical expertise" in finding his opinion persuasive.  (R. 22.)  This is consistent with the revised regulations which allow an ALJ to consider the source's understanding of the disability process.  *Harner*, ___ F.4th ___, 2022 WL 2298528, at *3; 20 C.F.R. §

404.1520c(c)(5).  An ALJ's RFC assessment need not "match or mirror the findings or opinions of any particular medical source . . . because the responsibility of assessing the RFC rests with the ALJ." *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *8 (M.D. Fla. Sept. 26, 2019).  Here, though the ALJ decision does not mirror Dr. James' opinion, it nonetheless incorporates the recommendations through SSR 83-10.  Accordingly, the Court finds substantial evidence supports the ALJ's determination.

### C.  High Cholesterol

Harris argues that her case should be remanded because the ALJ failed to properly consider her high cholesterol during the sequential evaluation process, either singly or in combination with her established severe impairments of CAD, TIA and CVA.  (Doc. No. 16 at 12-13.)  The Commissioner responds that the ALJ properly considered Harris' high cholesterol, that substantial evidence supports the ALJ's finding that Harris' conditions are not disabling, and that Harris failed to demonstrate that her high cholesterol is a severe impairment.  (Doc. No. 17 at 11-12.)

Harris listed high cholesterol in her disability application and testified at the administrative hearing that she had that condition.[6]  (R. 40, 155.)  Harris did not testify regarding any specific work limitations that relate to her high cholesterol.  Notably, the ALJ did not mention Harris' high cholesterol in the administrative decision.  However, the ALJ noted Harris' normal AIC levels and blood pressure readings in the administrative

---

[6] No further mention of high cholesterol was made in the administrative hearing.

decision. (R. 18.) The ALJ also noted Harris' normal heart rate and rhythm with no gallop, click, rub/murmurs and no edema in the administrative decision. (R. 18.)

The medical record establishes that Harris has a history of high cholesterol, including prescriptions and lab results. For example, when Harris sought medical documentation for her disability in January 2018, she was taking Lipitor for high cholesterol, and had no complaints of chest pain or discomfort. (R. 949-50.) Her cardiovascular examination showed a normal heart rate with no gallop, click, rub/murmurs and no edema. (R. 950.) While Harris refilled her cholesterol medications by telephone, there is no indication that she scheduled any office visits for additional treatment of high cholesterol. (R. 933, 935.)

"[A] diagnosis or a mere showing of a deviation from purely medical standards of bodily perfection or normality is insufficient [to prove disability]; instead, the claimant must show the effect of the impairment on [her] ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quotations and citation omitted). *See also Hutchinson v. Astrue*, 408 F. App'x 324, 325 (11th Cir. 2011) ("[P]roof of the mere existence of impairments does not prove the extent to which they limit a claimant's ability to work."). Simply stated, Harris must show that her high cholesterol causes some functional limitation to establish her disability. *See Moore v. Barnhart*, 405 F.3d 1208, 1214 n.6 (11th Cir. 2005); *see also Osborn v. Barnhart*, 194 F. App'x 654, 668 (11th Cir. 2006) (discounting physician's "medical records [that] reveal only diagnoses, not reasoned and medically-supported opinions detailing [the plaintiff's] work limitations or limited functions").

Here, the Court cannot find any portion of the hearing transcript in which Harris or her representative mentioned or discussed the work limitations originating from Harris' high cholesterol.  Harris' testimonial statement of high cholesterol and the information related thereto in the medical record are insufficient to establish the existence of a functional limitation that the ALJ must assess and account for in his decision.  *See Willyard v. Saul*, No. 8:19-cv-2537-T-TGW, 2020 WL 7074467, at \*4 (M.D. Fla. Dec. 3, 2020) ("[A] claimant cannot prove disability simply by reference to symptoms.").  Accordingly, because Harris fails to identify any specific limitations that relate to her high cholesterol, she fails to show how the RFC is unsupported by substantial evidence.  *See Wind*, 133 F. App'x at 690; *Moore*, 405 F.3d at 1214 n.6.  The Court finds no reversible error.

## VI.    CONCLUSION

After review of the administrative record, and considering all of Harris' arguments, the Court finds the Commissioner's decision to deny her disability is supported by substantial evidence and is in accordance with applicable law.  Accordingly, it is hereby

ORDERED that the decision of the Commissioner is AFFIRMED.

A separate judgment will be issued.

DONE this 25th day of August, 2022.

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE